❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No.23-875M(NJ) |
| Records and information associated with the cellular device ) | |
| assigned call number (414) 803-5270, that is in the custody ) | Matter No. 2022R00355 |
| or control of T-Mobile, as further described in Attachment A. ) | |
| ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 4/21/2023 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:4/7/2023 @ 10:50 a.m. _____

*Judge's signature*

City and state:   Milwaukee, Wisconsin _____       Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

**Matter Number 2022R00355**

1.      Records and information associated with the cellular device assigned call number **(414) 803-5270** (referred to herein and in Attachment B as the "Target Cell Phone"), that is in the custody or control of T-Mobile referred to herein and in Attachment B as the "Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.      The Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter Number 2022R00355**

I.    **Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from January 1, 2023, to present:

        i.  Names (including subscriber names, usernames, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

2

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

3

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government

4

shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

II.     This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III.     Information to be Seized by the Government

15.     All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; and possession and discharge of a firearm in furtherance of drug trafficking resulting in death, in violation of Title 21, United States Code, Sections 924(c) and 924(j), and possession of firearms by felons, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2), which have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Frank SHAW, Shannone BROWN, and other identified and unidentified subjects during the period of January 1, 2023 to present.

16.     Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

5

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 23_875M(NJ) |
| Records and information associated with the cellular device assigned call number (414) 803-5270 , that is in the custody or control of T-Mobile, as further described in Attachment A | ) ) ) | Matter No. 2022R00355 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841; 846; 924(c) & (j); & 18 U.S.C. § 922(g)(1) & 924(a)(2) | Conspiracy to possess with the intent to distribute and distribute controlled substances; Possession and discharge of a firearm in furtherance of drug trafficking resulting in death; and possession of firearms by a felon. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DEA TFO Aaron Hoppe
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means).*

Date: 4/7/2023

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin                Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT
# Matter No. 2022R355

I, Aaron Hoppe, being first duly sworn, hereby depose and state as follows:

## I.      INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call numbers **(414) 803-5270** (the "Target Cell Phone"), who service provider is T-Mobile ("Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The Target Cell Phone are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing,

1

routing, addressing, and signaling information associated with each communication to or from the Target Cell Phones.

4.      I have been a law enforcement officer since May 30, 2007.  I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau.  I have been assigned to a Federal Drug Task Force (Milwaukee HIDTA) and have been assigned to the Waukesha County Metro Drug Unit in 2012-2013, 2015-2017, and from 2022-present.  I have been a part of hundreds of state and federal investigations related to drug activity.

5.      I have received extensive training in death investigations, narcotics investigations, cell phone analytics, and I am currently a member of the Board of Directors for the Wisconsin Association of Homicide Investigation.

6.      I have conducted investigations ranging from death, drug, property, and child exploitative crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims.  I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone.  I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos.

2

7.     I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and have arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 21, United States Code, Sections 841 and 846. I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

8.     I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

9.     I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of firearms trafficking and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances,

3

and related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

10.     This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.  This affidavit is also based upon information gained from interviews with cooperating witnesses, and informants, whose reliability is established separately herein.

11.     The investigation to date has included traditional law enforcement methods, including, but not limited to: confidential informants, information from other law enforcement officers; recorded conversations; controlled buys; documentary evidence; physical surveillance; telephone records; electronic surveillance; and physical seizures.  However, because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

12.     I am currently participating in an investigation of drug trafficking, firearms trafficking, and possession of firearms in furtherance of drug trafficking, including the discharge of a firearm involving a homicide involving Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Shannone BROWN, Frank SHAW and other identified and unidentified subjects.  I am familiar with the facts and circumstances regarding this

investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers; and (c) information obtained from numerous witnesses, including confidential sources.

13.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; and possession and discharge of a firearm in furtherance of drug trafficking resulting in death, in violation of Title 21, United States Code, Sections 924(c) and 924(j), and possession of firearms by felons, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Frank SHAW, Shannone BROWN and other identified and unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II.    PROBABLE CAUSE

### A.    BACKGROUND

15.     Beginning in July 2022, case agents began investigating an armed drug trafficking organization (ADTO) operating in the Eastern District of Wisconsin, which involves Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Tasha M. BROWN, and other identified and unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance case agents have learned this ADTO sells fentanyl, purported to be heroin, methamphetamines, cocaine, ghost guns, and switches (device which

5

converts a semi-automatic firearm into a full-automatic firearm). Case agents also determined that members of the ADTO use multiple residences and multiple vehicles, including rental vehicles, to store and distribute their narcotics and firearms throughout the Eastern District of Wisconsin and travel out of state to obtain the controlled substances and firearms.

16.    On July 1, 2022, a Confidential Source (CS) contacted investigators and stated that he/she has knowledge that Azjuan K. MERIWETHER is selling high quantities of heroin, which MERIWETHER told CS is actually "feti, methamphetamine and cocaine. Based on my training, experience, and investigation into this ADTO, I understand "feti" to mean fentanyl, which was also verified by CS. The CS indicated that MERIWETHER sells guns, including "ghost guns," which based on my training and experience are guns which are purchased pre-assembled and are later assembled and are in fact a functioning weapon, but these pre-assembled weapons do not have serial numbers associated and are untraceable. In addition, CS indicated MERIWETHER sells switches for these guns, which based on my training and experience is a small part that is affixed to the weapon providing automatic fire capabilities on what would normally be a semi-automatic weapon. This provides the individual utilizing the weapon with the opportunity to fire a large amount of ammunition in a short time period.

17.    CS stated that MERIWETHER is known to rent hotel rooms in "high class" hotels and use those rooms to cut and package the illegal narcotics that he purchases in large quantities and prepares them for delivery in the area. CS also indicated that there is a "barber shop" in the area of 39th and North in Milwaukee, WI where MERIWETHER and his "crew" of "workers" cut and package illegal narcotics. CS stated that there are a large number of handguns and long guns at the "barber shop" and indicated that the video that was observed on YouTube of MERIWETHER was produced at the "barber shop".

18.     CS information is credible and reliable, CS has given information concerning individuals involved in illegal activities which has been independently verified through this investigation.  The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS is cooperating with law enforcement for consideration on pending criminal drug charges in Waukesha County as well as previous drug charges in Kenosha County. CS has no arrests or convictions relating to dishonesty but has had past arrests or convictions for felony drug offenses and other felony bodily harm offenses.

19.     Since July 5, 2022, CS and an undercover agent (UC) with ATF engaged in 17 undercover controlled buys with members of the ADTO including MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ ("RICO") and others.   Generally, during the controlled buys of controlled substances and/or firearms the CS placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, provide pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement.  Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions and the target was identified by the CS through photographs and verified by investigators through DOT photographs, booking photos, and social media.  Further firearms were also tested by ATF.

20.     Between July 2022 and March 2023, CS and/or UC obtained approximately 790 grams of heroin, which some of the substances field tested positive for fentanyl also;  240 grams

7

of methamphetamine; and 155 grams of cocaine from the ADTO during the controlled buys. Additionally, during 10 of the undercover controlled buys, the UC obtained approximately 20 firearms from the ADTO. Some of the firearms were installed with a Glock auto-sear device (switch), which converts a semi-automatic firearm into a full-automatic firearm, and other times the UC just purchased a Glock auto-sear device. The UC obtained approximately nine Glock auto-sear devices from the ADTO.

21.    During the investigation into the ADTO, FRANKLIN was identified as a member of the ADTO. Further FRANKLIN was identified by case agents as the likely connection to the heroin source and firearm and Glock auto-sear device source, based on statements made by MERWIETHER during controlled buys.

22.    Further, during the investigation into the ADTO, MERIWETHER also discussed purchasing kilograms of heroin from a source in Texas on October 13, 2022. During this conversation MERIWETHER stated that the "Mexican" has a source in Texas. MERIWETHER confirmed the "Mexican" was Daniel RODRIGUEZ PEREZ, aka "RICO."

23.    On November 1, 2023, CS and MERIWETHER were discussing a future drug transaction. CS and MERIWETHER discussed the purchase of 25 grams of heroin from MERIWETHER. In addition, MERIWETHER and CS discussed that CS would provide MERIWETHER with $5,000.00. MERIWETHER would then travel to Texas with "the Mexican," RODRIGUEZ-PEREZ, or MERIWETHER will meet with a source known by FRANKLIN that has connections in Texas where the ADTO can purchase kilograms of heroin.

24.    On December 27, 2022, MERIWETHER was arrested in Indiana after a lengthy vehicle pursuit with Indiana state law enforcement. Case agents learned from law enforcement in Indiana that MERIWETHER was in possession of approximately one pound of heroin, half of

8

pound of methamphetamine, and a quarter of pound cocaine. The narcotics were located in a brown Louis Vuitton bag, which MERIWETHER was in possession of when he exited his vehicle and attempted to flee on foot at the conclusion of the vehicle pursuit. MERIWETHER was subsequently charged in Vermillion County with 16 counts related to the vehicle pursuit and possession of narcotics and paraphernalia. The charges included possession with intent to deliver heroin, possession with intent to deliver methamphetamine, and possession with intent to deliver cocaine.

26. Case agents learned that MERIWETHER used the phone system in the Vermilion County Jail to make phone calls and also to send and receive text messages on a jail authorized cell phone that is monitored by the phone system provider. Case agents were provided access to all calls and texts, incoming and outgoing, for MERIWETHER while in custody. Case agents monitored numerous calls and messages between MERIWETHER and FRANKLIN, as well as other ADTO members.

26. On January 19, 2023, CS received a text message from FRANKLIN's telephone 414-254-8676 which was related to meeting CS and UC to sell 50 grams of heroin and a firearm. CS and UC later meet with FRANKLIN. FRANKLIN completed the transaction for heroin with CS and the transaction for the firearm with the UC. During the meeting, FRANKLIN indicated that he had additional firearms to sell to the UC, but that he needed to get keys to his storage unit.

27. On February 3, 2023, the UC met with FRANKLIN at 3907 North 24th Street, Milwaukee, Wisconsin. UC purchased two "ghost guns" (guns which are purchased pre-assembled and are later assembled and are in fact a functioning weapon, but these pre-assembled weapons do not have serial numbers associated and are untraceable) and a Glock 27 .with a Glock auto-sear device attached from FRANKLIN. Immediately following the firearms transaction, case

agents observed FRANKLIN drive the Jeep to the Economy Inn at 7284 West Appleton Avenue, Milwaukee, Wisconsin, where he appeared to be staying. Based upon review of court-authorized GPS location data from the Jeep that FRANKLIN drives, approximately one hour later, FRANKLIN traveled to 5117 West Fairmount Avenue, Milwaukee, Wisconsin.

28.     Additionally, throughout the investigation of the ADTO, court authorized GPS location data from that the Jeep that FRANKLIN drives revealed that the Jeep travelled to 5117 West Fairmount Avenue, Milwaukee, Wisconsin on February 15, 2023, February 23, 2023, March 13, 2023, and March 27, 2023.

29.     On February 28, 2023, the UC communicated with FRANKLIN using telephone number 414-519-2009 and agreed to purchase one firearm with a Glock auto-sear device attached (machinegun) and two ounces of cocaine, which eventually occurred at Diamond Inn Motel, located at 6222 West Fond Du Lac Avenue, Milwaukee, Wisconsin. Prior to meeting, the UC called FRANKLIN. FRANKLIN informed the UC that FRANKLIN was obtaining the firearm from his storage unit and would be another 20 minutes. Case agents were conducting surveillance of FRANKLIN during this communication. FRANKLIN was followed to SmartStop Self Storage located at 3420 West Capitol Drive, Milwaukee, Wisconsin.

30.     On March 3, 2023, case agents served SmartStop Self Storage facility with a grand jury subpoena and learned that Tasha BROWN, FRANKLIN's girlfriend, is named on a lease for a storage unit 1032 at that facility, SmartStop Self Storage, Unit 1032, located at 3420 West Capitol Drive, Milwaukee, Wisconsin. Tasha BROWN supplied to the facility her listed number as 414-484-6089, which has been used by the ADTO.

31.     While conducting physical surveillance of FRANKLIN on March 27, 2023, case agents observed FRANKLIN operating a 2018 Jeep bearing Wisconsin license plate ARL-7820,

which is registered to Tasha BROWN. As set forth above, case agents had previously obtained a court order for a GPS tracking device to be placed on the Jeep, which is primarily operated by FRANKLIN. Surveillance was conducted during this time and FRANKLIN was observed leaving the Economy Inn motel located at 7284 West Appleton Avenue, Milwaukee, Wisconsin at 11:33 am. FRANKLIN was alone at the time and was followed by surveillance team members and observed on GPS traveling to SmartStop Self-Storage Facility at 3420 West Capitol Drive, Milwaukee, Wisconsin. FRANKLIN arrived at the Storage facility at 11:40 am and departed at 11:45 am.

32.     After departing the SmartStop Self-Storage Facility, FRANKLIN was surveilled to a previously identified address associated with the ADTO, 5117 West Fairmount Avenue, Milwaukee, Wisconsin, which is the residence of Frank SHAW, who is suspected to be Tasha BROWN's brother. FRANKLIN arrived at the location at 11:49 am and exited the Jeep. FRANKLIN then met with an unknown black male who was standing next to a beige or brown in color Nissan Sentra that did not have any registration plates visible. Surveillance team members were unable to maintain constant visible surveillance of FRANKLIN during this time, but FRANKLIN was observed entering the Jeep and exiting the driveway at 11:53 pm. FRANKLIN was then followed to the area of North 21st Street and West Burleigh Road, Milwaukee, Wisconsin. Case agents lost visible surveillance of FRANKLIN, but the court authorized GPS showed the Jeep stopping at the residence of 3132 North 21st Street, Milwaukee, Wisconsin (the location where RODRIGUEZ-PEREZ was later murdered that evening). Case agents were familiar with 3122 North 21st Street, which was the address at which RODRIGUEZ-PEREZ and his former girlfriend Shannone BROWN, Tasha BROWN's sister, were known to reside previously.

33.     FRANKLIN was observed leaving the area of 3122 North 21st Street, Milwaukee, Wisconsin and was followed to another location before he returned to the Economy Inn at 12:15 pm.  At 12:54 pm, FRANKLIN was observed leaving the Economy Inn by himself, and was followed directly to the address of 5117 West Fairmount Avenue, Milwaukee, Wisconsin  arriving at 1:00 pm and remaining parked in the driveway until 1:39 pm.  FRANKLIN was believed to have entered the residence during this time frame.  At that point the Jeep left the driveway and was followed to multiple locations in the City of Milwaukee before surveillance was terminated.  Case agents reviewed court authorized GPS data for the Jeep and noted that the Jeep had returned to the address at 5117 West Fairmount Avenue, Milwaukee, Wisconsin from 5:42 pm to 5:50 pm, and again from 5:57 pm and 5:58 pm on March 27, 2023, after surveillance had been terminated.

34.     On the morning of March 28, 2023, case agents learned that Daniel RODRIGUEZ-PEREZ ("RICO"), a member of the ADTO who had provided CS with controlled substances during two controlled buys, had been shot and killed on March 27, 2023, at 7:43 pm.  Case agents are aware that RODRIGUEZ-PEREZ was a high value target in the MERIWETHER ADTO and ongoing surveillance was being conducted on RODRIGUEZ-PEREZ, including a pole camera that had been set up at his known residence located at 7028 35th Avenue, Kenosha, Wisconsin.

35.     Case agents met with detectives from the Milwaukee Police Department (MPD) regarding the homicide of RODRIGUEZ-PEREZ.   Detectives briefed case agents on the information that was learned during the initial homicide investigation.  The homicide occurred at 3122 North 21st Street (lower unit), Milwaukee, Wisconsin.  At 7:43 pm, RODRIGUEZ-PEREZ exited the front door of the residence and was talking on a cell phone when he was shot multiple times and was declared deceased on the scene by medical personnel.  There was a witness to the shooting, who was identified as M.N.  M.N. is known to case agents as the current girlfriend of

12

RODRIGUEZ-PEREZ and during the investigation case agents determined that M.N. lived with RODRIGUEZ-PEREZ at the residence located at 7028 35th Avenue, Kenosha, Wisconsin. During the homicide investigation, RODRIGUEZ-PEREZ's girlfriend, M.N. told law enforcement that FRANKLIN had been threatening RODRIGUEZ-PEREZ prior to his homicide on March 27, 2023.

36.     Case agents reviewed the court authorized GPS data for FRANKLIN's Jeep and the GPS data revealed that the Jeep was in the alley behind 3128 North 21st Street, Milwaukee, Wisconsin, the scene of RODRIGUEZ-PEREZ's homicide, from 7:42 pm to 7:44 pm. Case agents also learned that court-authorized electronic location information for FRANKLIN's phone 414-519-2009 revealed that the phone was in the area of 3128 North 21st Street, Milwaukee at the time the homicide of RODRIGUEZ-PEREZ occurred.

37.     Case agents also listened to MERIWETHER's jail calls from Vermillion County Jail in Indiana. Case agents listened to a jail call by MERIWETHER on April 1, 2023, at 4:13 pm to 414-435-6047. Based on prior jail calls between MERIWETHER and 414-435-6047 and review of MERIWETHER's Facebook account which was obtain pursuant to a search warrant, case agents determined the caller of 414-435-6047 to be Leo JEFF. Case agents identified JEFF previously based on communications between MERIWETHER and "Jeff Leo" on Facebook. Further, in a prior jail call between Meriwether and 414-435-6047, JEFF discussed missing court and a warrant being issued for his arrest. Case agents are aware JEFF is facing felony charges in Milwaukee County Case 2022CF4808 and missed court on January 23, 2023. The court issued a warrant for JEFF's arrest. Other calls between MERIWETHER and JEFF discuss drug trafficking and JEFF attempting to distance himself from FRANKLIN. Case agents also reviewed JEFF's publicly viewable Facebook account in which JEFF is still opening selling drugs.

13

38.     The following exchange occurred between MERIWETHER and JEFF on April 1, 2023, at the 4:17 mark in the recorded jail call.

> JEFF: You know who Frank is?
> MERIWETHER: What Frank?
> JEFF: He cut hair. You don't know nobody named Frank that be with Trell (Dontrell FRANKLIN)?
> MERIWETHER: Hell no.
> JEFF: Some nigga named Frank, that the one who set Rico (RODRIGUEZ-PEREZ) up. He set Rico up, told what's his name to come outside and Trell was in a cut outside waiting on him twist him.
> MERIWETHER: How he look?
> JEFF: I don't know we waiting on a picture now.

39.     During the investigation into the ADTO, case agents learned that RODRIGUEZ-PEREZ was identified by the nickname "Rico," and that ADTO members used several nicknames for FRANKLIN including "Q," "Que," "T," and "Trell."  Based upon their training, experience, and the investigation to date, case agents believe that JEFF was telling MERIWETHER that "Frank" (believed to be Frank SHAW) had set "Rico" (RODIGRIGUEZ-PEREZ) up by telling him to come outside leading to his murder.  Case agents are aware that RODRIGUEZ-PEREZ was murdered outside the residence of 3122 North 21st Street, Milwaukee, Wisconsin.

40.     The conversation between MERIWETHER and JEFF continued but was not related to the above information.  Based upon their training, experience, and the investigation to date, case agents believe MERIWETHER and JEFF's conversation related to the above information continued later in the recorded jail call at 9:45 mark.

> MERIWETHER: He light skinned.
> JEFF: Yup, kinda.
> MERIWETHER: He got braids or something?
> JEFF: On my baby he got braids.
> MERIWETHER: He got a tattoos on his face?
> JEFF: What you say?
> MERIWETEHR: He got tattoos on his face?
> JEFF: Yup.
> MERIWETHER: That Tasha's brother.

14

> JEFF: Oh yea yup
> MERIWETHER: They stay they off of Fairmount and 51st.
> JEFF: Oh yea that's where Rico……

41.     Case agents identified an individual associated with the address of 5117 West Fairmount Avenue, Milwaukee, Wisconsin as Frank T. SHAW (XX/XX/1995). Case agents reviewed Wisconsin Department of Transportation (DOT) records from October 31, 2022, that indicated Frank SHAW's address is 5117 West Fairmount Avenue, Milwaukee, Wisconsin. Case agents obtained records that indicated Frank SHAW is listed on the utilities of 5117 West Fairmount Avenue, Milwaukee, Wisconsin as of October 20, 2022. Frank Shaw also has previously provided 5117 West Fairmount Avenue, Milwaukee, Wisconsin in court records as a home address in Waukesha County Case 2021CT270 which resolved on June 18, 2021. Case agents also reviewed records with Wisconsin Department of Corrections (DOC). On April 22, 2021, Frank SHAW provided a home address 5117 West Fairmount Avenue, Milwaukee, Wisconsin. In addition, case agents observed a DOC photo for Frank SHAW that was taken in 2019 (figures 1 and 2). Frank SHAW matches the description in the recorded jail call including having multiple facial tattoos. A case agent conducting surveillance of FRANKLIN on March 27, 2023, reviewed the DOC photo of Frank SHAW and confirmed that the individual observed in the driveway meeting with FRANKLIN at 5117 West Fairmount Avenue, Milwaukee, Wisconsin on March 27, 2023. The case agent further stated that Frank SHAW had braids on March 27, 2023.

   

(Figure 1)            (Figure 1)

42.     SHAW has prior felony convictions including in Milwaukee County Case 2013CF3127 for burglary, Sheboygan County Case 2015CF569 for Take and Drive without Owner's Consent, Repeater, and Fond du Lac County Case 2019CF528 for Possession of THC (2nd offense), Repeater.   Based on this these prior convictions, SHAW is prohibited from possessing a firearm.

43.     Case agents reviewed call detail records for FRANKLIN's telephone 414-519-2009 and observed telephone number **414-803-5270 (**Target Cell Phone).   Case agents obtained subscriber information from the service provider T-Mobile.   The subscriber of **414-803-5270** is Frank SHAW and **414-803-5270** is still active as of April 4, 2023.   Case agents reviewed call detail records between FRANKLIN and Frank SHAW's telephone **414-803-5270** and Frank SHAW's telephone **414-803-5270** and RODRIGUEZ-PEREZ.   FRANKLIN and Frank SHAW's telephone **414-803-5270** had 584 contacts since approximately February 1, 2023, till March 28, 2023.   Frank SHAW's telephone **414-803-5270** and RODRIGUEZ-PEREZ had 21 contacts since approximately February 1, 2023, till March 27, 2023, RODRIGUEZ-PEREZ's death.

**B.     ARREST OF FRANKLIN AND BROWN AND SEARCHES**

44.     On March 28, 2023, case agents were conducted court authorized electronic surveillance, court authorized GPS surveillance, and physical surveillance of FRANKLIN.   On March 28, 2023, at 11:39 a.m. case agents observed FRANKLIN at SmartStop Self Storage at 3420 West Capitol Drive, Milwaukee, Wisconsin.   Case agents observed FRANKLIN walking around carrying what was believed to be an AR style rifle.   At 12:09 pm, case agents observed FRANKLIN at his residence of 3907 North 24th Street, Milwaukee, Wisconsin with the same AR style rifle. Between 12:57 pm and 3:47 pm, case agents observed FRANKLIN at 2028 North 39th Street, Milwaukee, Wisconsin.   At approximately 4:26 p.m., physical surveillance and court

16

authorized GPS location data from the Jeep indicated FRANKLIN was about one block south of 5117 West Fairmount Avenue, Milwaukee, Wisconsin. At 5:07 pm on March 28, 2023, case agent arrested FRANKLIN and BROWN on arrest warrants issued pursuant to a criminal complaint in Eastern District of Wisconsin Case 23-mj-358, *United States v. Franklin et al*.

45.     Case agents also reviewed call detail records for FRANKLIN's telephone 414-519-2009 from March 27, 2023. FRANKLIN and Frank SHAW's telephone, **414-803-5270** had 24 contacts on March 27, 2023. Notably, FRANKLIN's call detail records reveal that there was no telephone contact between FRANKLIN and Frank SHAW's telephone, **414-803-5270** between 5:35 p.m. and 8:15 p.m. (the homicide of RODRIGUEZ-PEREZ occurred at approximately 7:40 p.m.).

46.     Additionally, on March 28, 2023, case agents executed five search warrants for locations associated with the ADTO including 3907 North 24th Street, Milwaukee, Wisconsin, residence of BROWN and FRANKLIN; 3716 West North Avenue, Milwaukee, Wisconsin, a business used by the ADTO; Economy Inn, Room 118, 7284 West Appleton Avenue, Milwaukee, Wisconsin, hotel room used by BROWN and FRANKLIN; 7028 35th Avenue, Kenosha, Wisconsin 53142, RODRIGUEZ-PEREZ's residence; and SmartStop Self Storage Unit 1032 located at 3420 West Capitol Drive, Milwaukee, Wisconsin, BROWN's storage unit.

47.     At 3907 North 24th Street, Milwaukee, Wisconsin, residence of BROWN and FRANKLIN, case agents noted the residence appeared to be vacant, though several undercover controlled buys occurred just outside this location. Case agent did not locate anything of value at this location. Case agents did not locate an AR style rifle at this location. At 3716 West North Avenue, Milwaukee, Wisconsin, a business used by the ADTO, case agent did not locate anything of value. Case agents did not locate an AR style rifle at this location. At Economy Inn, Room 118,

17

7284 West Appleton Avenue, Milwaukee, Wisconsin, hotel room used by BROWN and FRANKLIN, case agents did not locate anything of value. Case agents did not locate an AR style rifle at this location. It appeared BROWN and FRANKLIN checked out that day.

48. At 7028 35th Avenue, Kenosha, Wisconsin 53142, RODRIGUEZ-PEREZ's residence, case agents located a firearm that was possessed by RODRIGUEZ-PEREZ's girlfriend's brother, D.N. Case agents did not locate an AR style rifle at this location. D.N. told case agents that, with respect to RODRIGUEZ-PEREZ's homicide, RODRIGUEZ-PEREZ's (Rico's) "people were saying that Rico stole from them." Based upon their training, experience, and the investigation to date, case agents believe that Rico's "people" referred to FRANKLIN, who was identified as a source of supply for the DTO, and that when D.N. referred to Rico "stealing" from his "people," he was referring to Rico stealing either drugs or drug proceeds from other members of the DTO, including FRANKLIN.

49. At SmartStop Self Storage Unit 1032 located at 3420 West Capitol Drive, Milwaukee, Wisconsin, BROWN's storage unit, case agents located an AK long gun, kilogram wrappers, and a blender with suspected drug residue. Case agents did not locate an AR style rifle at this location.

50. Homicide detectives located two firearms with Glock auto-sear devices at 2028 North 39th Street, Milwaukee, Wisconsin during a consent search on March 28, 2023. During an initial examination, one of the firearms is believed to been used in the homicide of RODRIGUEZ-PEREZ. Case agents did not locate an AR style rifle at this location.

51. Case agents have not located the AR style rifle FRANKLIN possessed on March 28, 2023, prior to his arrest, and FRANKLIN was observed one block south of 5117 W. Fairmount on March 28, 2023.

52.     Case agents conducted a court authorized forensic extraction of FRANKLIN's telephone 414-519-2009, which was located on March 28, 2023.  Case agents observed that all but 4 communications (24 contacts) on March 28, 2023, between FRANKLIN and Frank SHAW's telephone **414-803-5270** had been deleted.  Based on my training and experience, I know that though items may have been deleted from one user's cellphone, the items or communication might still be located on the other caller's cellphone. Determine the location of Frank SHAW's telephone **414-803-5270** could assist case agents in recording valuable evidence regarding the ADTO and RODRIGUEZ-PEREZ's homicide.

53.     Case agents reviewed a recorded jail call placed by Tasha BROWN on March 29, 2023, at 3:39 pm, while in custody at the Waukesha County Jail.  BROWN called 414-519-9779 and spoke with an unidentified female (UF), possibly one her of sisters, and an unknown male (UM) who is in the background with the unidentified female.  The UF told BROWN that the house "on 24th" was searched and BROWN stated that she is not concerned since she had not been there recently. The UF then stated that the "Montree's house" was searched.  The UM then stated, "they are going to hit everyone" and "they are going to go to Frank's house."  Based on the investigation into the ADTO and the calls between Meriwether and JEFF, "Frank" is believed to be Frank SHAW.

54.     Case agents reviewed a forensic extraction of  RODRIGUEZ-PEREZ's cellphone, which was located on him at the time of his death.  Case agents located 10 contacts between Frank SHAW's telephone **414-803-5270** and RODRIGUEZ-PEREZ's cellphone on March 27, 2023, the day of the homicide.  Case agents observed that Frank SHAW's telephone **414-803-5270** contact RODRIGUEZ-PEREZ's cellphone twice at around 7:07 pm on March 27, 2023, about thirty-five minutes before the homicide. From RODRIGUEZ-PEREZ's cellphone extraction it appeared

19

RODRIGUEZ-PEREZ and Frank SHAW spoke for about 1 minute each time. Frank SHAW's telephone **414-803-5270** then call RODRIGUEZ-PEREZ's cellphone at 7:54 pm, about ten minutes after the homicide and again at 8:30 pm. These calls were not connected, consistent with RODRIGUEZ-PEREZ being deceased and not able to pick up the phone. Case agents also observed that RODRIGUEZ-PEREZ's cellphone received a call from 414-551-8136 at 7:42 pm, one minute before RODRIGUEZ-PEREZ is murdered. Case agents reviewed call detail records for RODRIGUEZ-PEREZ's cellphone and Tasha BROWN's identified cellphone and believe 414-551-8136 is Shannone BROWN's cellphone number. Case agent obtained subscribe information from T-Mobile, which indicated the phone belongs to Shannone BROWN with a list address of 3122 North 21st, Milwaukee, Wisconsin, the location of the homicide.

55.     I believe cellular telephones assigned call numbers **414-803-5270** (the "Target Cell Phone"), whose service provider is T-Mobile ("Service Provider"), a wireless telephone service provider, continues to contain valuable information on this account that could be used as evidence for the possible crimes of conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; and possession and discharge of a firearm in furtherance of drug trafficking resulting in death, in violation of Title 21, United States Code, Sections 924(c) and 924(j), and possession of firearms by felons, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

## III.   JURISDICTION

56.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. §

2711(3)(A)(i).

## IV. TECHNICAL BACKGROUND

*57.* Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Service Provider's network or with such other reference points as may be reasonably available.

### A. Cell-Site Data

*58.* In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

*59.* Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone

21

numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

*60.* I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

61. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

*62.* I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes

22

referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

63.     Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

64.     Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

### C. Pen-Trap Data

*65.*     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded

by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### D. Subscriber Information

*66.* Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

*67.* In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone's user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications between Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Frank SHAW, Shannone BROWN and other identified and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Frank SHAW, Shannone BROWN and others acted-in-concert, by establishing

the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## V. AUTHORIZATION REQUEST

68.    Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

69.    I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

70.    I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

71.    Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

**ATTACHMENT A**

**Property to Be Searched**

**Matter Number 2022R00355**

1.      Records and information associated with the cellular device assigned call number **(414) 803-5270** (referred to herein and in Attachment B as the "Target Cell Phone"), that is in the custody or control of T-Mobile referred to herein and in Attachment B as the "Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.      The Target Cell Phone.

I.    **Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.    The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from January 1, 2023, to present:

i.    Names (including subscriber names, usernames, and screen names);

ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii.    Local and long-distance telephone connection records;

iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v.    Length of service (including start date) and types of service utilized;

vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

27

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

28

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall

29

compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III. Information to be Seized by the Government

72. All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; and possession and discharge of a firearm in furtherance of drug trafficking resulting in death, in violation of Title 21, United States Code, Sections 924(c) and 924(j), and possession of firearms by felons, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2), which have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Frank SHAW, Shannone BROWN, and other identified and unidentified subjects during the period of January 1, 2023 to present.

73. Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.